HUNTER ET AL., APPELLANTS, v. FERGUSON, APPELLEE.

1. FRAUD.

Any alienation of property for the purpose of hindering, delaying or defeating creditors in subjecting the property to the payment of debts, is fraudulent.

2. DEBTOR AND CREDITOR—PREFERENCE.

A debtor has the right to prefer his creditor.

3. ASSIGNMENT FOR THE BENEFIT OF CREDITORS—FRAUD.

To vitiate the general assignment for the benefit of creditors there must be a fraudulent intention, followed by irregular and fraudulent disposition of the property: in other words, there must be either a reservation of the property, or such a disposition of it, that the proceeds will inure in some way to the benefit of the assignor.

4. SAME.

The assignor must provide no benefit to himself other than what may result from the payment of his debts; impose no condition upon the right of his creditors to participate in the fund; authorize no delay on the part of the trustee.

5. SAME.

A person may make a legal assignment of all his property for the benefit of creditors, notwithstanding his assets may be in value many times the amount of his indebtedness, and an expectation of the surplus after the full payment of debts is not a badge of fraud.

6. INSTRUCTIONS.
Where there is no evidence upon which instructions in regard to fraud
can be predicated, it is an error to give them.

*Appeal from the District Court of Weld County.*

· PRIOR to the first of November, 1890, appellants as partners under the firm name of Hunter & West, were doing a banking business at Greeley.   About that date the business was closed, and they were succeeded by the Greeley National Bank.   On the 25th of August, 1890, appellee deposited with the firm $225 ; on the third day of September made another deposit of $175 ; on the 30th day of September another deposit of $125 ; on October 6th another deposit of $175.   For each of such deposits she received a certificate payable six months after date with interest at 6 per cent. per annum ; the different certificates aggregated some $700.

After November 3d, when succeeded by the Greeley National Bank, defendants were found to be in a failing condition and insolvent.   Demand was made by appellee on December 26th for the payment of the respective certificates. They were not paid.   On the same date this action was commenced in the county court in the county of Weld, by filing a complaint and suing out an attachment, alleging as grounds for attachment that the certificates of deposit were overdue and unpaid ; that the defendants had fraudulently transferred and assigned, and were about to fraudulently transfer, convey and assign their property and effects so as to hinder or delay creditors.   The attachment was levied upon certain chattels, and certain supposed debtors of the firm were served with process of garnishment.   On the same date, December 26, 1890, after the attachment was levied, Hunter & West, and West individually, made general assignments of all their property for the benefit of their creditors.

Special traverse denying each allegation contained in the affidavit for attachment, was filed.   An answer to the complaint, traversing each material allegation, was also filed. Upon the issues so formed trial was had to a jury, resulting

in a verdict for the defendants, with special findings that the certificates of deposit were none of them due, and that the defendants had not and were not about to fraudulently dispose or transfer or assign any of their property.

Judgment upon the verdict, dismissing the attachment. An appeal was taken to the district court, and trial had at the May term, 1891, resulting in a disagreement of the jury. At the November term of 1891, a trial was had to a jury, resulting in a verdict for the plaintiff, and a finding that the defendants, on the 26th of December, 1890, did fraudulently transfer their property, and were about to fraudulently transfer their property with intent to hinder and delay their creditors. The court instructed the jury that the certificates of deposit sued on were not due when the action was commenced, and that question withdrawn from their consideration. Motion for a new trial was denied, judgment entered upon the verdict for $730.31. An appeal was prosecuted to this court.

The supposed errors relied upon by counsel in argument are :

The third, as follows :   " The verdict, the order sustaining attachment, and the judgment of the court is unsupported by and against the weight of the evidence."

The sixth, being to an instruction of the court :   " The court further instructs you that if you believe from the evidence that the acts, statements and conduct of the defendants, or either of them, at and about the time the attachment in question was sued out, were such as fairly and reasonably showed an intention on their part to so dispose of their property as to intentionally hinder and delay and defraud their creditors, you should find for the plaintiff."

The seventh assignment of error, also to an instruction of the court, as follows :

"If you find from the evidence that George H. West, managing partner of Hunter & West, bankers, believed at the time the assignment was made that there was enough, or more than enough, property in said firm to pay all indebtedness, and if judiciously managed there would be a surplus

left after paying all debts, and that one of the moving reasons for the making of such assignment was the protection of such surplus, such facts in connection with the assignment, are a badge of fraud and indicative of an intent to convey property so as to delay, hinder or defraud creditors."

The ninth assignment, that the court erred in modifying an instruction asked by defendant's counsel, as follows :

" The court instructs the jury that where, in consequence of action of one or more particular creditors, there is danger that the property, which but for such action would be sufficient to pay every debtor in full, will fall short of that result; and the object and intent of the debtor are to enable all his creditors to realize their entire demands, and prevent loss or injury to anyone, he is in a condition to make a valid assignment for the benefit of all his creditors.   When the property of a debtor is of a doubtful character, and may or may not, according to circumstances, be sufficient to discharge his debts in full, and his primary object and influencing motive is to distribute it equitably and fairly, an assignment in such case instead of violating the policy of the law for the rights of creditors is in harmony with both.   The possibility of a surplus resulting in such a case to the debtor himself would form no objection to such an arrangement."   To which the court added " But a debtor is not allowed to make an assignment to prevent a sacrifice of his property, when no one but himself is in danger of being a loser by its immediate appropriation."

Mr. H. N. HAYNES, for appellants.

Mr. A. C. PATTON, and Mr. J. W. McCREERY, for appellee.

REED, J., delivered the opinion of the court.

Taking up the errors assigned in the same order as discussed by counsel, the third is the first to be considered, viz.:

That the verdict and judgment sustaining the attachment were against the weight of evidence, and unsupported by the evidence. Ordinarily the verdict of a jury will not be disturbed where the testimony is conflicting, and there is sufficient evidence to sustain the verdict.

The only question to be determined was that of fraud. It has been frequently said by the courts that fraud is a question of fact to be determined by the jury, by all the circumstances of the case ; but it would perhaps be safer to say that it is a mixed question of law and fact. "It is the judgment of law on facts and intents." Waite on Fraud. Con., 22 ; *Pittibone v. Stevens*, 15 Conn. 26 ; *Sturdevant v. Ballard*, 9 John, (N. Y.) 342 ; *Ottey v. Manning*, 9 East, 64.

"Fraud is always a question of fact with reference to the intention of the grantor. * * * Every case depends upon its circumstances, and is to be carefully scrutinized, but the vital question is always, the good faith of the transaction. There is no other test." Swayne, J. in *Lloyd v. Fulton*, 91 U. S. 485 ; *Humes v. Scruggs*, 94 U. S. 22.

Creditors have an interest in the property of the debtor. It has been called an equitable interest ; it is the fund to which they look for the payment of the debts, and the law makes it so. Any alienation of property for the purpose of hindering, delaying or defeating creditors in subjecting the property to the payment of the debts, is fraudulent. So long as a man retains the control and possession of his property, whether he is solvent or insolvent, he has the legal right to dispose of his property, and if he does so honestly and honestly applies the proceeds in the discharge of his indebtedness, he has full right to do so. But any transfer to put the property beyond the reach of creditors or to reserve benefits to himself is fraudulent; hence the question, as before said, is the intention, and this must be determined from all the circumstances.

In the management of the property and the application of it by the parties preceding the assignment, we find no evidence whatever of misapplication or fraudulent disposition.

292 HUNTER v. FERGUSON. [April T.,

It is not contended in argument that there was not a *bona fide* use of the assets in the payment of legitimate indebtedness, nor is there any evidence or claim that the debtors were to have any resulting benefits from any of the transactions. So long as a debtor retains control of his property he can legally prefer one creditor to another. Even if insolvent, he can pay to one the entire indebtedness, to another nothing, and such discrimination is legal. A careful review of all the testimony fails to show that a dollar was misapplied; it only shows that some were paid and others were not; that the debtors had exercised the legal right of election and discrimination, consequently, the first clause of the paragraph upon which the attachment was based, viz.: " That defendants had fraudulently conveyed, transferred and assigned their property " * * * so as to hinder and delay creditors, was absolutely unsustained by any evidence.

The following is sec. 186, Mill's Ann. Stat.: " No assignment shall be invalid because of misappropriation of the property of the debtor by him, prior to the assignment, but the assignee may recover such property, if so misappropriated in fraud of this act. But nothing in this act contained shall invalidate any conveyance or mortgage of property, real or personal, by the debtor before the assignment, made in good faith, for a valid and valuable consideration."

In attempted support of the second clause of the affidavit for an attachment, viz.: " are about to fraudulently transfer, convey and assign their property and effects so as to hinder or delay their creditors," the evidence was of an intention to make a general assignment for the benefit of all creditors, which was done the morning after the suing out of the attachment in this case. A general assignment by a debtor of all his property for the benefit of all his creditors is not a fraudulent disposition of property furnishing ground for an attachment when it is made honestly and *bona fide*. To vitiate it there must be fraudulent intention followed by irregular and fraudulent disposition of the property or a failure to convey all. In other words, there must be either a reser-

vation of property or such a disposition of it that the proceeds will inure in some way to the benefit of the assignor. If made fully and in good faith, it is not only a proper and legal application of assets, but an equitable one, preventing the sequestration and sacrifice of the estate by a few at the expense of the many, and although it may operate to hinder and delay creditors, it is no ground for attachment. The fundamental principles are that " the debtor must devote all his property absolutely to the payment of his debts; reserve no control for himself." *Riggs v. Murray*, 2 John. Ch. (N. Y.) 565; " Must provide for no benefit to himself, other than what may result from the payment of his debts; impose no condition upon the right of the creditors to participate in the fund; authorize no delay upon the part of the trustee." *Sutkins v. Aird*, 6 Wall., 79; *Oliver Lee & Company's Bank v. Talcott*, 19 N. Y., 148.

A very careful examination of all the evidence—and a very wide range was properly allowed—fails to show that any of the rules or controlling canons were violated, and that there was not a full, complete and absolute transfer of all the property for the benefit of all creditors. We can find no evidence upon which the verdict could be based, and conclude that it must have been the result of bias or prejudice on the part of the jury, or that the jury was misled in regard to the law, by the instructions of the court.

It is in evidence that on the day this action was commenced and the day preceding the assignment, Mr. Hunter, managing partner of the firm, in conversation with the husband of appellee, said that if he could not get money they would have to go to the wall. " That he had considerable ditch stock and he would dispose of it, and he would have from ten to twenty thousand dollars left, and I need not be alarmed about my money." Again, " he said he would have $15,000 or $20,000 left after he settled up his business. This was the only evidence in the case upon which any question of fraud was attempted to be predicated, and the only basis for the instructions of the court submitting the question of fraud

to the jury. It is claimed that this expression of a hope, opinion or expectation of having a balance left after full payment of debts, was a badge of fraud and the question was submitted to the jury by the instructions.

The instruction on which the seventh assignment of error is based is faulty. It is in conflict with the statute which provides " That any person may make a general assignment of all his property for the benefit of all his creditors." The right is neither modified nor restricted, nor is the question of sufficiency, or surplus, or inadequacy, made a factor. The right to make the assignment is absolute, regardless of such considerations. As before stated, it is only necessary that it should be full and complete, a *bona fide* conveyance of all the debtor's property for the benefit of all his creditors, these being the only requisites or tests of validity. In order to vitiate the assignment, it must be found lacking in one of the essentials. The expressed expectation of a remaining surplus could in no way affect it, nor could the desire to protect it. A man can make a legal assignment although his assets may be in value four times the amount of indebtedness. Such being the law, it was error to submit to the jury the question of motive in regard to a supposed surplus. The language is also unfortunate. It is, " believed at the time the assignment was made that there was enough or more than enough property in said firm, to pay all indebtedness, and if judiciously managed, there would be a surplus left after paying all debts, and that one of the moving reasons for the making of such assignment was the protection of such surplus. *Such facts in connection with the assignment* are a badge of fraud and indicative of an intent to convey property, so as to delay, hinder or defraud creditors." This narrows and restricts the law, introduces a new element, and not only submits a question of motive, but clearly indicates that the assignment may be invalid because coupled with the motive. I can find no authority where the expectation of a surplus after the full payment of debts, is declared to be fraudulent or a badge of fraud. " It can seldom be the duty of the court to instruct

the jury that a single fact will warrant the jury in finding fraud. All the facts surrounding the transaction must be taken into account collectively." *Sleeper v. Chapman*, 121 Mass., 404.

For the same reasons the modification and addition to the instruction assigned in the ninth assignment of error is erroneous.

There was no evidence upon which the instructions in regard to fraud could be predicated, hence the giving of them was erroneous. *Allen v. Eldridge*, 1 Colo. 288; *Thatcher v. Kaucher*, 2 Colo. 699; *Lawson v. Van Auken*, 6 Colo. 52; *Burlock v. Cross*, 16 Colo. 162.

The finding and judgment sustaining the attachment must be reversed.

*Reversed.*