## WOODBURY v. DISTRICT OF COLUMBIA.

### No. 6809.

United States Court of Appeals for the District of Columbia.

Argued March 15, 1937.

Decided June 1, 1937.

George C. Gertman, of Washington, D. C., for appellant.

Elwood H. Seal, Vernon E. West, and Chester H. Gray, all of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, GRONER, and STEPHENS, Associate Justices.

VAN ORSDEL, Associate Justice.

Appellant, plaintiff below, appeals from a judgment rendered by the District Court in favor of the defendant, the District of Columbia, on a plea of res judicata filed by defendant in an action of assumpsit.

In 1924 plaintiff was the owner of two parcels of land at Thirty-Eighth and Albemarle Streets Northwest, in this city. Parcel 35/223 lay to the east of Thirty-Eighth Street, and was bounded on the south by Albemarle Street and on the north by Nourse Road. Parcel 35/222, which was triangular in shape, lay to the west of Thirty-Eighth Street, and was bounded on the south by Albemarle Street. Thirty-Eighth Street, upon which both parcels abutted, had not been cut through to the north. The next parallel street north of Albemarle Street is Brandywine Street.

On October 30, 1924 the District Commissioners instituted in the lower court Condemnation Case No. 1647, entitled, "In re: Extension of Brandywine, 38th and 40th Streets and widening of 41st Street, Northwest, in the District of Columbia."

In that proceeding $225 for benefits was assessed against parcel 35/222, and $2,000 against parcel 35/223; the jury having been instructed that "by the opening, widening and extension of said streets the jury are to understand their establishment, laying out and completion for all the ordinary purposes of a public thoroughfare." Appellant paid these assessments. At the time of that proceeding Brandywine Street, west of Thirty-Eighth Street to Wisconsin Avenue, had not been laid out as a street; it existed only on the plan of the permanent system of highways.

Damages in the sum of $37,770.93 were awarded for all the land condemned. Included in the land taken for the purposes described in the Commissioners' petition were parts of parcels 35/161 and 35/163, abutting on the east side of Wisconsin Avenue, which parts were necessary for the extension of Brandywine Street from its then western terminus through to Wisconsin Avenue. The sum of $27,696.84 was awarded for the parts of these two parcels taken.

An interval of eight years elapsed, during which time the land lying east of Wisconsin Avenue and west of Thirty-Eighth Street, which was condemned in Case No. 1647 for the extension of Brandywine Street, was graded and paved, but the intervening portion, which had been dedicated, remained unopened and unimproved. Other changes took place in the neighborhood. Nebraska Avenue, a 120-foot thoroughfare lying to the west of appellant's property, running northeast from Albemarle Street between Thirty-Eighth Street and Wisconsin Avenue and cutting through the unimproved portion of Brandywine Street, was opened. It further appears that the District of Columbia acquired for school purposes certain tracts of land lying between Nebraska Avenue, Chesapeake, Fortieth, and Albemarle Streets, and separated by the unopened portion of Brandywine Street, Thirty-Ninth Street, and certain alleys.

Acting under the provisions of the so-called Street Readjustment Act, approved December 15, 1932 (47 Stat. 747; sections 99a–99j, T. 25, D.C.Code Supp. I, 1933), the Commissioners held hearings, as a result of which they determined that the unimproved section of Brandywine Street, and the parts of Thirty-Ninth Street and the alleys which separated the aforementioned school lands, should be closed, and gave notice of their intention to close these streets and alleys. Appellant and others filed objections to closing the section of Brandywine Street in question, whereupon, under section 5 of said act (section 99e, T. 25, D.C. Code Supp. I), it became necessary to institute a proceeding in rem in the lower court for the closing of these streets "and for the ascertainment of damages and the assessment of benefits resulting from such closing and abandonment."

On December 11, 1933, the Commissioners filed their petition in Case No. 2256, praying that the court impanel a jury "to ascertain the damages and benefits resulting to property affected by said closing and abandonment of said streets and alleys in the District of Columbia."

Appellant, through counsel, appeared at the trial of Case No. 2256 and presented evidence of damage to his land resulting from the closing of Brandywine Street between Nebraska Avenue and Fortieth Street (the unopened section), but no damages were awarded appellant's property by the verdict. The verdict was ratified and confirmed by the court and no appeal was taken.

Thereafter appellant, apparently relying upon District of Columbia v. Thompson, 58 App.D.C. 313, 30 F.(2d) 476 (affirmed 281 U.S. 25, 50 S.Ct. 172, 74 L.Ed. 677), filed his declaration in the instant case against the District of Columbia, on the theory that because the Commissioners had failed to open Brandywine Street as a through street between Thirty-Eighth Street and Wisconsin Avenue, there had been a failure of consideration, and he was entitled to the sum of $1,958.32, with interest. He arrived at this figure by using the proportion which $27,696.84 (the damages awarded for parts of parcels 35/161 and 35/163) bears to the total damages awarded ($38,517.87), which is about 73 per cent. He figured that, because Brandywine Street had been closed, the consideration for about 73 per cent. of the benefits which had been assessed against his property failed, and he was entitled to the return of the proportionate amount of the $2,225, with interest, which had been paid by him.

The District filed a plea of res judicata, alleging that "the same identical cause of action, that is to say, the claim of plaintiff for damages alleged to result to his said land by reason of the closing, in part, of said Brandywine Street, and the same identical question of law and fact, were presented to the court by plaintiff in said proceeding No. 2256," and that, before the commencement of the instant suit, the Supreme Court of the District, by its judgment in Case No. 2256, found that appellant sustained no damage by reason of the closing of Brandywine Street, which judgment is in full force and unreversed.

After a trial without a jury, the lower court sustained the plea and entered judgment for the defendant. From that judgment this appeal is taken.

The sole question for our determination is whether the lower court erred in sustaining the plea of res judicata.

Our first inquiry is whether Case No. 2256 and the instant case are based upon the same cause of action. We do not think they are. The instant case is a claim in personam, based upon partial failure of consideration, namely, partial failure of the benefits assessed and paid in Case No. 1647. Case No. 2256, on the other hand, was a statutory proceeding to determine what damages were sustained and what benefits accrued by reason of the closing of Brandywine Street, considered as "established, laid out and opened for all the ordinary purposes of a public highway."

The two cases being upon different causes of action, it must clearly appear, under the well settled rule enunciated in Cromwell v. County of Sac, 94 U.S. 351, 24 L.Ed. 195, that the matter involved in the instant case was actually litigated and determined in Case No. 2256. This does not appear. The only evidence before the court in the instant case to support the plea of res judicata consisted of the Commissioners' petition in Case No. 1647 and the petition and instructions in Case No. 2256, together with evidence that "plaintiff, through counsel, appeared at the trial of District Cause 2256 and presented evidence of damage to his land resulting from the closing of Brandywine Street between Nebraska Avenue and Fortieth Street, but no such damages were awarded his property by the verdict of the jury, which said verdict was ratified and confirmed by the Court, and no appeal tak-

en," and that "the land acquired in District Court Cause 1647 was opened and devoted to the uses for which it was condemned, and that the part of Brandywine Street closed in District Court Cause 2256 embraced no part of the land acquired in District Court Cause 1647."

It nowhere appears that evidence was adduced as to the assessment of benefits against appellant's property for the opening and extension of Brandywine Street, considered as laid out and completed for all the ordinary purposes of a public thoroughfare. For all that appears in the record, the evidence presented by appellant as to damage to his land from the closing of Brandywine Street was merely evidence of damages, considering Brandywine Street "established, laid out and opened for all the ordinary purposes of a public highway," as indeed the jury, in Case No. 2256, were instructed to consider it.

On this state of the record, we think the lower court erred in concluding that appellant's present cause of action was barred by the judgment in Case No. 2256.

In Russell v. Place, 94 U.S. 606, 608, 24 L.Ed. 214, the Court said: "It is undoubtedly settled law that a judgment of a court of competent jurisdiction, upon a question directly involved in one suit, is conclusive as to that question in another suit between the same parties. But to this operation of the judgment it must appear, either upon the face of the record or be shown by extrinsic evidence, that the precise question was raised and determined in the former suit. If there be any uncertainty on this head in the record,—as, for example, if it appear that several distinct matters may have been litigated, upon one or more of which the judgment may have passed, without indicating which of them was thus litigated, and upon which the judgment was rendered,—the whole subject-matter of the action will be at large, and open to a new contention, unless this uncertainty be removed by extrinsic evidence showing the precise point involved and determined. To apply the judgment, and give effect to the adjudication actually made, when the record leaves the matter in doubt, such evidence is admissible." And at page 610 of 94 U.S., 24 L.Ed. 214, the court stated: " * * * and if upon the face of a record any thing is left to conjecture as to what was necessarily involved and decided, there is no estoppel in it when pleaded, and nothing conclusive in it when offered as evidence."

We think there was no evidence before the lower court that the particular matter involved in the instant case was actually determined in Case No. 2256, or was necessary to the determination in that case.

The judgment of the lower court is reversed and the case remanded.

STEPHENS, Associate Justice.

I dissent. I agree that because the action under the Street Readjustment Act [47 Stat. 747; D.C.Code (1929) Supp. I, tit. 25, §§ 99a–99j] was a statutory proceeding *in rem* and the instant case a personal action for failure of consideration, the two cases are based upon different causes of action. But I think that the matter involved in the instant case was actually litigated and determined in the statutory proceeding. The jury was there charged "first, to ascertain the damage which will be suffered by the owners of land in the District of Columbia resulting from the closing and abandonment of . . . Brandywine Street, between Nebraska Avenue and 40th Street; . . . " and was also instructed that "in awarding damages they shall consider Brandywine Street established, laid out and opened for all the ordinary purposes of a public highway." Brandywine Street established, laid out and opened for all the purposes of a public highway was one of the things for which the appellant was assessed in the original condemnation suit, and it is for the failure of that—resulting from the fact that Brandywine Street was never actually opened and now in the statutory action has been legally closed—that the appellant seeks damages. Under such instructions the jury in ascertaining, in the statutory proceeding, the damages resulting from the closing and abandonment of Brandywine Street, considering it established, laid out and opened, necessarily considered as an element of the damage to the appellant the very matter at issue in the instant case. The jury in failing to return an affirmative verdict of damages for the appellant in the statutory action must have concluded that although the appellant was damaged by the closing of Brandywine Street, that damage was offset by other benefits such as the opening of Nebraska Avenue and Albemarle Street. Thus the appellant has had his day in court. The Street Readjustment Act permits, in an action thereunder, the assessment of benefits as well as the awarding of damages. [§§ 99e–99f]

Putting a different case for the purpose of illustration, if, at the time of proceedings under the Street Readjustment Act, the surrounding street conditions had been precisely the same as they were at the time of the original condemnation action in which the appellant was assessed, the jury, in determining in the action under the Street Readjustment Act what damages were suffered from the closing of the theoretically opened Brandywine Street, would necessarily consider exactly the same conditions which had been considered by the condemnation jury in assessing for the opening of the street. And since the two juries would then have considered exactly the same conditions, the damages would be equal in amount ˙ to the assessment—subject only to the possible difference in judgment of separate juries. Yet under the ruling of the majority in the instant case the property owner could then bring another action for failure of consideration and recover the amount of his assessment. Concretely, he could have paid $2,000 to have the street opened, and then, although conditions had not changed before the Street Readjustment Act proceeding, would be entitled to recover $2,000 in that action and $2,000 more in a suit for failure of consideration. If the Street Readjustment Act proceeding would foreclose a subsequent action for failure of consideration in the situation supposed, it must equally do so in the instant situation. The issues which have been litigated and determined do not vary accordingly to whether the property owner did or did not win an award in the Street Readjustment Act action.

It is to be noted that the Street Readjustment Act was passed some three years after the decision by this court in District of Columbia v. Thompson, 58 App.D.C. 313, 30 F.(2d) 476, affirmed 281 U.S. 25, 50 S.Ct. 172, 74 L.Ed. 677. While the legislative history of that Act does not affirmatively show that Congress had the Thompson case in mind in passing it, nevertheless, it is apparent that the Act provides land owners in the District of Columbia with a remedy which they did not have at the time of the Thompson case.

I think the Street Readjustment Act is a condemnation act in reverse, designed, as is the condemnation act [D.C.Code (1929) tit. 25, §§ 51–71; 34 Stat. 151–153, 930; 35 Stat. 582; 36 Stat. 268; 37 Stat. 178; 39 Stat. 21; 41 Stat. 566; 44 Stat. 675; 45 Stat. 953] to dispose of all claims in a single suit. The condemnation act, for use in establishing streets, provides for the disposition of all claims, including claims for damages, made by persons whose land is taken, and claims for benefits, made by the District against those whose property will receive advantage; and the Street·Readjustment Act, for use in dis-establishing streets, also provides for the disposition of all claims in a single action, including claims of property owners for damages suffered from the dis-establishment of streets, as well as claims by the District because of benefits received by the abutting owners, that is, additional land.

I think that the majority opinion permits two suits on the same issue, and in so doing denies effect to the intent of Congress under the Street Readjustment Act.

GRONER, J., concurs in this dissent.